O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:     (In Chambers) Order Finding for Defendant After Court Trial**

This is an action for benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  A court trial on the administrative record was held on May 11, 2010.  Having considered the arguments and the evidence presented, the Court finds for Defendant.  This constitutes the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52.

I.     Findings of Fact

In August 2004, Plaintiff Curtis Walker ("Plaintiff") was a 53-year-old male a lead project manager in the information technology department of Kaiser Permanente ("Kaiser"). Plaintiff applied for and was denied long-term disability ("LTD") benefits under Kaiser's employee benefit plan.  Plaintiff instituted this action under § 502(a) of ERISA to challenge the denial of his claim.

A.     The Long Term Disability Plan

Kaiser offers a variety of employee health benefit plans as part of its employee benefits package, including LTD benefits under the Kaiser Permanente Long Term Disability Plan ("the LTD Plan").  The LTD Plan is an employee benefit plan sponsored by Kaiser and governed by ERISA, 29 U.S.C. § 1001 *et seq.*  Defendant Metropolitan Life Insurance Company ("MetLife") is listed as a claim administrator in the Summary Plan Description.  (AR 137.)  Additionally, the "Claims Review Process" section of the Summary Plan Description states that "MetLife is the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

insurer and third party administrator for the Employee life, Dependent life, and Long-Term Disability insurance plans."  (AR 139.)

The LTD Plan is governed by the Kaiser Permanente Welfare Benefit Plan Document ("the Plan Document").  (AR 152-164.)  According to § 4.1 of the Plan Document:

> With respect to each Program in which benefits are provided under a Contract in which the Insurer is responsible for review of benefit claim determinations, *such Insurer is the named fiduciary with respect to such determinations*, pursuant to ERISA Regulation § 2560.503-1(g)(2).

(AR 158 (emphasis added).)  Section 4.2 of the Plan Document allocates fiduciary responsibilities to named fiduciaries "with respect to the specific discretionary authority exercised by it," and named fiduciaries are permitted to delegate fiduciary responsibilities to other parties.  (AR 158.)  Furthermore, "each person to whom fiduciary authority shall have been allocated or delegated under Section 4.2, shall have full and complete discretionary authority with respect to its responsibilities under the Plan."  (AR 158.)

According to § 5.1 of the Plan Document, the Kaiser Foundation Health Plan is identified as the "Plan Administrator."  (AR 158.)  However, § 5.2 specifies that—to the extent that the Plan Administrator has delegated administrative responsibilities to insurers—"such Insurer(s)[] shall have sole and full discretionary authority to administer each Plan, including but not limited to the following:

a. The discretionary authority to make and enforce rules for the administration of the Plan, including forms to be used in such administration.

b. The discretionary authority to construe and interpret each and every document setting forth the applicable terms of a Plan, including but not limited to this document, Summary Plan Descriptions, and Contracts.

c. The discretionary authority to decide questions regarding the eligibility of any person to participate in such Plan.

d. The discretionary authority to approve or deny claims for benefits under such Plan as provided in Article VI hereof.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|----------|------------------------|------|--------------|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

    e.      The discretionary authority to appoint or employ agents, counsel, accountants, consultants and other persons to assist in the administration of the Plan."

(AR 158-159.)

According to Article VI of the Plan Document, the process for obtaining benefits under a particular plan is "set forth in the relevant Contract or Contracts and Summary Plan Description or Summary Plan Descriptions."  (AR 160.)  The Plan Document indicates that the relevant insurer is the "appropriate named fiduciary" and "shall make a full and fair review of the claim and its denial and decide the claim in the exercise of its *discretionary authority*." (AR 160 (emphasis added).)  The Summary Plan Description outlines the key provisions of the LTD Plan, which provides that plan participants are entitled to LTD benefits only if they are "totally disabled and cannot work."  (AR 89.)  A person is "considered totally disabled if:

    a.      During your elimination period [the six-month period after the first day of disability during which no benefits are payable] and the next 24-month period you are unable to earn more than 80% of your pre-disability earnings at your own occupation for any employer in your local economy, or

    b.      After the first 24 months you are unable to earn more than 80% of your indexed pre-disability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified, taking into account your education, training, experience and pre-disability earnings."

(AR 89.)

    B.     <u>Plaintiff's Claim for LTD Benefits</u>

In February 2004, Plaintiff was taken to the emergency room of Huntington Memorial Hospital due to the sudden onset of numbness and weakness on the left side of his body, headaches, fatigue, pain, and tightness in his chest.  After none of the diagnostic tests confirmed a myocardial infarction, Plaintiff was transferred to a Kaiser facility, where he had a neurology consultation with Dr. Rodrigo Rodriguez ("Dr. Rodriguez").  Dr. Rodriguez diagnosed Plaintiff as having suffered a stroke and began to explore alternative diagnoses, including multiple sclerosis and myasthenia gravis.

On March 26, 2004, Plaintiff last worked as a lead project manager for Kaiser, and his

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

first day of absence was March 29, 2004. (AR 516.) Plaintiff went on disability leave and, at some point thereafter, submitted a claim for LTD benefits to MetLife. On July 21, 2004, Plaintiff was provided with an "Employer Statement" completed by Kaiser (AR 516-517), which indicated that Plaintiff was receiving a bi-weekly salary continuance of $2,412.48 from March 25, 2004 to September 25, 2004 as well as a monthly workers' compensation benefit of $1,456.00 (AR 516). The Employer Statement also explained that Plaintiff's basic earnings as a lead project manager totaled $8,711.75 per month. (AR 516.)

On August 18, 2004, Plaintiff submitted an "Employee Statement." (AR 473.) According to this statement, Plaintiff's disability began on March 22, 2004, and that he first sought treatment on March 6, 2004. On the form, Plaintiff provided contact information for two physicians: Dr. Grace Fu ("Dr. Fu") and Dr. Rodriguez. Plaintiff explained that he could not perform his job duties because he was suffering from "stroke, numbness, hand, face, legs, chest pains." (AR 473.)

Plaintiff also provided an "Attending Physician Statement" completed by Dr. Fu on August 19, 2004. (AR 471-472.) Dr. Fu is a family practitioner, and Dr. Fu explained that Plaintiff's symptoms began on April 4, 2004, and that Dr. Fu treated Plaintiff and advised him to cease his occupation on that date.[1] According to the form, Plaintiff was diagnosed with a stroke, based on Plaintiff's symptoms of "weakness, numbness L>R side, chest pains occasionally." (AR 471.) In addition to these symptoms, Dr. Fu referenced objective findings from an MRI that showed degenerative changes. (AR 471.) With regard to Plaintiff's psychological functions, Dr. Fu found that Plaintiff was competent to endorse checks and direct the use of the proceeds, but that he suffered from "moderate limitations" due to "stress over illness, difficulty with finding diagnosis, physical limitations and pain caused stress." (AR 471.) With regard to Plaintiff's physical capabilities, Dr. Fu indicated that Plaintiff was able to sit intermittently for up to four hours, stand intermittently for up to two hours, and walk intermittently for up to one hour. (AR 472.) Dr. Fu also indicated that Plaintiff was capable of climbing, twisting, bending, stooping, reaching above shoulder level, and operating a motor vehicle. (AR 472.) Dr. Fu did not respond to the question: "In your opinion, why is patient unable to perform job duties?" (AR 472.) Nevertheless, Dr. Fu indicated that Plaintiff was unable to work at all. (AR 472.)

---

[1] MetLife's Trial Brief indicates that Dr. Fu stated that the symptoms and treatment began on March 4, 2004. *See Def.'s Opening Trial Brief* (Dkt. #45), at 6:13. Upon review of the Attending Physician Statement, however, it appears that the dates on the form were changed to "04/04/04." (AR 471.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

Plaintiff also submitted an "Activities of Daily Living" form. (AR 418.) The form indicated that he was diagnosed with "stroke, myasthenia gravis, [c]ontinued numbness/weakness/pain on left side (arm, leg, and foot), headaches, minor to severe fatigue, occasional pressure and tightness in chest." (AR 418.) Plaintiff also indicated that he was suffering from insomnia due to his symptoms (AR 419), and that he was able to drive only short distances (AR 421).

On September 2, 2004, Anil Joshi, a Kaiser program manager, completed a "Supervisor Statement" form, which summarized the requirements of Plaintiff's position as a lead project manager. (AR 466-467.) Anil Joshi explained that Plaintiff's occupation required five to six hours of sitting and one to two hours of walking per day. (AR 466.) The document also indicates that Plaintiff was required to use both hands for five to six hours, and was required to "continually" maintain interpersonal relationships and "frequently" manage stressful situations. (AR 466.) The document also notes that Plaintiff took medical leave on two prior occasions. (AR 467.) While the responsibilities of his job were not subject to modification, the form indicates that "[s]ome modifications to schedule can be accommodated." (AR 467.)

C.    MetLife's Initial Denial of Plaintiff's Claim

Upon receipt of the required documentation and forms, MetLife referred Plaintiff's claim to Dr. Valerie Ito ("Dr. Ito") for an independent physician consultant review. Dr. Ito is board-certified in physical medicine and rehabilitation, and MetLife requested Dr. Ito's evaluation of Plaintiff's medical records and his ability to continue performing in his current occupation. Dr. Ito prepared a report diagnosing Plaintiff as having suffered a "[c]erebrovascular accident," and then recounted Plaintiff's job employment responsibilities:

> Job description for lead project manager indicates 5-6 hours of sitting and repetitive use of both hands, 1-2 hours of walking is required. There is occasionally [sic] lifting and carrying of up to 10lb[s] and continuous need for interpersonal relationship and frequent situations involving stress. Some modifications to schedule can be accommodated.

(AR 349.) Dr. Ito then proceeded to review Plaintiff's medical records, including MRIs, vascular studies, neurological records, CT scans, and other medical examinations. (AR 349-355.) The report specifically references Dr. Fu's report (AR 353-355) and Plaintiff's consultation with Dr. Rodriguez (AR 353).

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

In light of Plaintiff's medical history and employment duties, Dr. Ito concluded, "Objective medical to support impairment from sedentary work activities is not demonstrated in the records submitted for review." (AR 256.) While the records indicated that Plaintiff suffered from "left-sided face and head pain early in March of 2004 followed by some numbness and weakness in his left upper and lower extremities," Dr. Fu noted that Plaintiff remained independent with regard to his "ambulation" and "even traveled from Pasadena to San Diego for a wellness conference for 7-10 days." (AR 355-356.) Dr. Ito also mentioned that Plaintiff was not taking his pain relief medication (Vicodin) on a regular basis. (AR 356.)

On November 11, 2004, MetLife sent Plaintiff a letter indicating that his claim was denied. (AR 357-359.) The letter outlines the two-part definition of "disabled" under the LTD Plan and indicated that MetLife had not received medical support of disability, noting that this decision was based upon a review of medical information received from Kaiser Permanente, Baldwin Park, Kaiser Permanente, Los Angeles, and Dr. Fu. (AR 357.) The letter mentions Dr. Fu's report that Plaintiff was unable to perform his job duties due to a stroke and resulting numbness and pain, and summarizes Dr. Ito's findings. (AR 357-358.) The letter also recounts the following tests that all produced normal results: (1) Plaintiff's April 4, 2004 head CT scan, EKG, and troponin were negative, (2) Plaintiff completed a variety of physical tests on April 6, 2004 without difficulty, (3) Plaintiff achieved 99% of the predicted maximum heart rate in an April 7, 2004 vascular study, (4) an April 10, 2004 CT brain scan was normal, and (5) a variety of tests administered on May 17, 2004, May 28, 2004, June 14, 2004, and July 8, 2004. (AR 358.) While the letter does acknowledge that Plaintiff was "found to have a pontine stroke" (AR 358), MetLife concluded that it did not have sufficient evidence that Plaintiff's "impairment [was] of such severity that it would prohibit [him] from performing the duties of [his] sedentary occupation" (AR 359). The letter ends with instructions regarding Plaintiff's appeal rights under ERISA, including a request to include "the results of appropriate testing that would document any claims of impairment that would prevent you[] from performing the duties of your occupation." (AR 359.)

### D.     Plaintiff's Administrative Appeal

On January 31, 2005, Plaintiff sent a letter to MetLife to appeal the denial of his LTD claim. (AR 346-347.) According to the letter, MetLife failed to properly credit the opinions of Dr. Fu and Dr. Rodriguez, and his claim was allegedly denied based on cardiac history and on MetLife ignoring Plaintiff's stroke and myasthenia gravis diagnoses. Plaintiff attached a letter from Dr. Rodriguez dated January 24, 2005, in which Dr. Rodriguez reports that various studies were consistent with a diagnosis of myasthenia gravis. (AR 348.) Dr. Rodriguez's letter also

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

notes that Plaintiff has been improving since receiving medication, but that Plaintiff was "not quite back to a [sic] 100% and still is considered disabled."  (AR 348.)

In response to Plaintiff's letter, MetLife informed Plaintiff that it had received Plaintiff's appeal and that his claim had been referred for an independent review.  (AR 339.)  MetLife referred the claim appeal to Dr. Joseph J. Jares, III ("Dr. Jares"), a board-certified neurologist, who prepared a "Medical Consultant Review—Estimation of Physical Capacities" (AR 337-338) as well as a written report (AR 318-322).  According to his report, Dr. Jares noted the primarily cognitive demands of Plaintiff's employment as an "IT project management leader" and specifically identified Dr. Ito's report as one of the records provided for his review (AR 324); Dr. Ito's report summarized Plaintiff's job requirements as involving 5-6 hours of sitting with repetitive use of both hands and 1-2 hours of walking (AR 349).  Dr. Jares found that Plaintiff's condition did not restrict his ability to sit, stand, or walk, and that Plaintiff can still lift and carry items of up to 20 pounds.  (AR 337.)  According to the written report, Dr. Jares reviewed the submitted medical information and determined:

> From a purely objective neurological standpoint, the medical records submitted do support that [Plaintiff] can continue to operate as an IT project leader.  He has no evidence of any cognitive impairment.  His occupation is primarily of a sedentary nature and his deficits would not preclude him from working in at least a physically sedentary routine office type setting.

(AR 321.)

In addition to finding that the medical evidence of Plaintiff's condition did not support a finding of disability, Dr. Jares questioned the stroke and myasthenia gravis diagnoses.  (AR 320.)  For example, Dr. Jares explained that the effectiveness of one of Plaintiff's medications (Mestinon) did not support the myasthenia diagnosis because the medication can be effective in treating other neuromuscular processes and even brain tumors.  (AR 321.)  Dr. Jares also acknowledged the letter from Dr. Rodriguez, but noted that the single-fiber EMG study cited in Dr. Rodriguez's letter was not submitted.  (AR 320.)  With regard to the stroke and myasthenia diagnoses, Dr. Jares concluded, "In the absence of a clear-cut history and in the absence of additional laboratory studies, Mr. Walker's diagnosis remains unclear."  (AR 320.)

Despite his concerns with Plaintiff's diagnosis, Dr. Jares credited the evidence of Plaintiff's neurological impairments, but he determined that these deficits did not preclude Plaintiff from continuing with his job duties:

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

Mr. Walker's diagnosis is uncertain at this time.  However, he has been noted to have some neurologic deficits, including weakness of his left upper and lower extremity, sensory loss involving his left upper and lower extremity, and diffuse hyperreflexia, but no cranial nerve abnormalities and no cognitive abnormalities. These findings would not preclude Mr. Walker from working as an IT project leader.

(AR 321.)

E.    MetLife's Final Denial of Plaintiff's Claim

On March 4, 2005, MetLife sent Plaintiff a letter informing him that the original denial of benefits was upheld on appeal.  (AR 313-316.)  In the letter, MetLife again recounted the definition of "disabled" under the LTD Plan.  (AR 313.)  The letter also indicated that Plaintiff's "entire claim file was reviewed," including the information submitted by Dr. Fu in her August 19, 2004 "Attending Physician Statement," and the January 24, 2005 letter from Dr. Rodriguez submitted by Plaintiff in support of his appeal.  The letter reviewed Dr. Fu's findings that Plaintiff had the ability to sit for up to four hours, stand for up to two hours, and walk for up to one hour; that Plaintiff "had no limitations with climbing, twisting, bending and stooping, reaching above shoulder level and operating a motor vehicle; that Plaintiff had the ability to lift and carry up to 20 pounds occasionally; and that Plaintiff had the ability to perform work repetitively.  (AR 314.)  After describing Dr. Fu's summary of Plaintiff's physical capabilities, the letter notes that "Dr. Fu stated that you could work a total of zero hours per day."  (AR 314.) The letter also references Dr. Rodriguez's diagnosis of stroke and myasthenia gravis, and his findings with regard to Plaintiff's symptoms of fatigue and numbness.  The letter notes that Dr. Rodriguez found that Plaintiff was "not quite back to 100%."  (AR 314.)

The letter then reviewed the findings of Dr. Jares and his determination that the evidence of cognitive impairment "would not preclude [Plaintiff] from working in a sedentary setting." The letter concludes:

Review of the information that has been submitted on appeal, along with the information on record, does not support a disability severe enough to keep you from the duties of your sedentary occupation through your elimination period and beyond.  Therefore, you can not [sic] be considered disabled as defined by the Kaiser Permanente's Plan and the original claim determination was appropriate.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

(AR 316.)  The letter also states that no further appeals would be considered and that Plaintiff had a right to file a civil action against MetLife pursuant to § 502(a) of ERISA.  (AR 316.)

    F.    <u>MetLife's Addendum Review</u>

On April 1, 2005, Plaintiff submitted a "Request for Assistance" with the California Department of Insurance, seeking aid from the department with regard to the denial of his claim. (AR 205-208.)  Plaintiff requested assistance due to "[s]troke, continued numbness and weakness with pain on the left side (upper and lower), headaches, minor to severe fatigue, occasional chest tightness, and lapses in mental concentration."  (AR 206.)  Plaintiff stated that he was seeking financial compensation for LTD payments that should have been paid from September 2004 through to the time Plaintiff is "deemed fit to return to work by Kaiser's medical team of experts."  (AR 206.)

On April 21, 2005, MetLife sent a letter to Plaintiff, acknowledging a request from the California Department of Insurance for review of Plaintiff's claim.  (AR 308-309.)  In the letter, MetLife explained the reasons for its initial denial of Plaintiff's claim and its subsequent decision to uphold the denial on administrative appeal.  This letter was forwarded to the California Department of Insurance.  (AR 309.)  Nevertheless, in early 2006, MetLife permitted Plaintiff to submit additional evidence that he believed supported his claim as part of an "addendum review."

In response, Plaintiff provided a neurological report from Dr. Berry Ludwig ("Dr. Ludwig"), a clinical professor of neurology at the University of California, Los Angeles (AR 190-192), as well as a "Claim for Disability Insurance Benefits—Doctor's Certificate" signed by Dr. Rodriguez on July 20, 2005 (AR 194).  According to Dr. Ludwig's neurological assessment:

> My impression is that the patient's major problems consist of left-sided weakness and sensory disturbance. . . . Currently the patient is on Mestinon and is doing well. He has no definite signs of myasthenia on [sic] his examination at this time.

(AR 192.)  Nevertheless, Dr. Ludwig concluded that Plaintiff "appears to be temporarily totally disabled due to his persistent symptoms of numbness, weakness, back pain, and spasms."  (AR 192.)  Dr. Rodriguez's supplemental form reiterated his diagnoses of myasthenia gravis and stroke, and indicated that Plaintiff's symptoms included "waxing/waning weakness." (AR 194.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

These new documents were forwarded to Dr. Jares for independent review, who in turn completed a supplemental report. (AR 182-184.) Dr. Jares indicated in his supplemental report that "[a] thorough review of the additional submitted medical information has been completed." (AR 182.) In the report, Dr. Jares reviewed Dr. Rodriguez's January 24, 2005 letter and July 20, 2005 form as well as Dr. Ludwig's report. Dr. Jares also referenced Plaintiff's January 25, 2006 appeal letter, in which Plaintiff expressed frustration at his difficulty in getting an appointment with a Kaiser neurologist.[2] (AR 183.) Dr. Jares noted that, in Plaintiff's letter, Plaintiff claims that his symptoms have been improving since taking certain medications. (AR 183, 188.) Despite the new information provided by Plaintiff, the report concludes:

> The newly submitted information does not provide any meaningful indication as to why Mr. Walker could not work in his normal occupation as a project management leader. His occupation is primarily cognitive intellection and not physical. Dr. Ludwig submitted an examination in November 2005, which was essentially normal except for some left-sided weakness and the abnormal gait and sensory disturbance. These findings do not appear to be of such severity that he would be incapable of working in a usual office setting. . . . There has been no mention made of any cognitive and intellectual difficulties. There has been no mention made of any visual problems. . . . Based upon this additional submitted information, there is no support for inability of Mr. Walker to perform office-based work as a project management leader. Therefore, my recommendation remains unchanged.

(AR 183-184.)

On March 30, 2006, MetLife sent a letter to Plaintiff, informing Plaintiff that his supplemental information had been forwarded to the physician consultant who originally examined his file and that the consultant determined that the new information did not support a finding of disability. (AR 177.) The letter then stated that the March 4, 2005 letter upholding the initial denial was the final decision on Plaintiff's claim, and MetLife enclosed a copy of the March 4, 2005 letter for Plaintiff's review. (AR 177.)

G.    Plaintiff's Civil Action

---

[2] Plaintiff also noted in the letter that "[i]t would have been so simple for [Dr. Rodriguez] to state that the total disability was due to but not limited to" Plaintiff's inability to sit for more than 15 minutes, muscle spasms, and body weakness. (AR 187.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

On March 7, 2008, Plaintiff filed a civil action against MetLife, alleging that MetLife breached the LTD Plan in denying Plaintiff's claim for LTD benefits. *See Walker v. Metro. Life Ins. Co.* (CV 08-1627 PSG (VBKx)). The Court's Scheduling Order in that case required the parties to file opening trial briefs by January 6, 2009, but they failed to submit timely trial briefs. The Court struck the untimely briefs and dismissed the case without prejudice pursuant to Federal Rule of Civil Procedure 16(f)(1)(C) for failure to comply with a court order.

On February 18, 2009, Plaintiff filed a new action asserting the same claims against Defendant. On July 9, 2009, the Court denied a motion to dismiss filed by Defendant, finding that the dismissal of the initial action did not preclude this action under the doctrine of *res judicata*. *See* Dkt. #26. On April 13, 2010, in compliance with the Scheduling Order, the parties filed their opening trial briefs,[3] followed by timely responsive trial briefs on April 27, 2010. A bench trial was held on May 11, 2010.

## II.   Conclusions of Law

### A.   Legal Standard

When examining an ERISA plan administrator's denial of benefits, the standard of review employed by district courts depends on whether the plan at issue conferred discretion on the plan administrator to determine a participant's eligibility for benefits or to interpret the terms of the plan. *See Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). If no such discretion is granted to the plan administrator, the decision is reviewed *de novo*. *See Abatie*, 458 F.3d at 963. However, if discretion is conferred, the plan administrator's decision is reviewed for abuse of discretion. *See id.* The court will find an administrator's decision to be discretionary where "the plan includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (9th Cir. 1992); *see also Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th

---

[3] The Court observes that Plaintiff's Trial Brief exceeds the page limit imposed by Local Rule 11-6. *See* L.R. 11-6 ("No memorandum of points and authorities, pre-trial brief, *trial brief*, or post-trial brief shall exceed 25 pages in length, excluding indices and exhibits, unless permitted by order of the judge." (emphasis added)). Plaintiff did not request leave of the Court to file a 28-page brief. However, the Court exercises its discretion and considers Plaintiff's Trial Brief in full.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

Cir. 1996), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) ("We have not been stingy in our determinations that discretion is conferred upon plan administrators." (emphasis omitted)).

A deferential standard of review applies even if the plan administrator has a conflict of interest. *See Conkright v. Frommert*, 2010 WL 1558979 (U.S. April 21, 2010) ("[W]hen the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict." (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008))). However, the court must consider the conflict as a factor in its analysis. *See Montour*, 588 F.3d at 629; *Abatie*, 458 F.3d at 965. An insurer who acts as both the plan administrator and the funding source for benefits operates under a structural conflict of interest because by denying benefits "the administrator retains money for itself." *Montour*, 588 F.3d at 630. In such a case, the court considers all the facts and circumstances, including the administrator's conflict of interest, in determining whether the administrator abused its discretion in denying the claim. *See Montour*, 588 F.3d at 630 ("[T]he court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together."); *see also Glenn*, 128 S. Ct. at 2351 ("We believe that *Firestone*[, 489 U.S. 101,] means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.").

In general, "a district court may review only the administrative record when considering whether the plan administrator abused its discretion." *Abatie*, 458 F.3d at 970. However, where a conflict of interest exists, the inquiry is more probing and "a district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest." *Id.* at 970. When determining the weight to afford a conflict, a court can view technical conflicts of interest unaccompanied by evidence of something more with a low level of skepticism. *See id.* at 968. A court may view with greater skepticism a benefits denial by an administrator with a conflict of interest accompanied by shifting explanations for denial, evidence of malice, self-dealing, failure to adequately investigate or ask the plaintiff for necessary evidence, or failure to credit a claimant's reliable evidence. *See id.* Nevertheless, "the decision on the merits . . . must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Id.* at 970 (citations omitted).

B. Abuse of Discretion Applies

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

As a preliminary issue, the Court must decide whether the Plan Document gives MetLife discretion in the administration of the LTD Plan, i.e. whether to review the decision *de novo* or for abuse of discretion. Plaintiff argues that Kaiser was the Plan Administrator and that Kaiser retained discretion in making claim determinations under the LTD Plan. *See Pl.'s Trial Br.* 12:20-13:14. While § 5.1 does designate Kaiser as the Plan Administrator, Plaintiff fails to acknowledge § 5.2, which indicates that, to the extent that responsibilities are delegated, "Insurer(s), shall have sole and full discretionary authority to administer each Plan." (AR 158.) Plaintiff tries to argue that no such delegation exists because "[t]here is no language contained within the Summary Plan Description which confers any authority or discretion upon METLIFE to make a claims determination and, in fact, Kaiser is deemed the Plan Administrator throughout." *See id.* at 16:26-17:21. However, in the Summary Plan Description, MetLife is identified as "the insurer and third party administrator" for the LTD Plan (AR 139), and thus Kaiser delegated the responsibility of making benefit determinations and reviewing claim denials to MetLife (*see* AR 139, 158). Accordingly, MetLife has the "sole and discretionary authority" to interpret the plan, determine eligibility issues, and make benefit determinations. (*See* AR 158-159.) Furthermore, as MetLife was the insurer responsible for administering the LTD Plan, "[MetLife] is the named fiduciary with respect to such determinations, pursuant to ERISA Regulation § 2560.503-1(g)(2)." (*See* AR 158, 160.)

A delegation of authority under EIRSA can be derived from several sources. *See Saffron v. Wells Fargo & Co.*, 522 F.3d 863, 866-67 (9th Cir. 2008) (concluding that several provisions of the Summary Plan Description make "perfectly clear" that the insurer was granted discretionary authority to administer the LTD plan in question). The Court finds that MetLife was unambiguously granted discretionary authority to administer the LTD Plan because (1) the Summary Plan Description expressly identifies MetLife as the claims administrator for the LTD Plan, and (2) the Plan Document confers significant discretion upon the insurers that administer the various plans.[4] While this conclusion involves a degree of interpretation—viewing the Plan Document and the Summary Plan Description side by side—it is clear that the Plan Document conferred discretionary authority upon MetLife to administer the LTD Plan. *See id.* at 867 ("While the path to this conclusion is somewhat tortuous, it is also perfectly clear." (citation

---

[4] At least two other courts interpreting the same LTD Plan have concluded that Kaiser delegated sole discretionary authority to MetLife to administer the LTD Plan. *See, e.g., Fox v. Kaiser Found. Employee Benefit Plan*, 2006 WL 1709040, at *13 (N.D. Cal. June 20, 2006); *Deborah Ortiz v. Kaiser Found. Health Plan, Inc.*, SACV 05-00293 JVS (ANx) (Aug. 31, 2006 Order re Standard of Review).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

omitted)).  Thus, the Court reviews MetLife's decision to deny Plaintiff's claim for abuse of discretion.

      C.      <u>Conflict of Interest</u>

      It is undisputed that MetLife operates under a structural conflict of interest because it both funds and administers benefits under the LTD Plan.  *See Pl.'s Trial Br.* 22:19-21; *Def.'s Trial Br.* 7:24-26.  Thus, the Court considers the conflict as a factor in the Court's evaluation of MetLife's denial of Plaintiff's claim.  *See Montour*, 588 F.3d at 630; *see also Saffon*, 522 F.3d at 868-69 ("[W]hen reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, we must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference we accord the administrator's decision.").

      Plaintiff contends that MetLife operated under an actual conflict of interest when it denied Plaintiff's claim.  In support of this conclusion, Plaintiff argues that MetLife (1) failed to investigate his claim, (2) made claim determinations without complete information and documentation, (3) failed to properly credit and defer to the opinions of Dr. Fu, Dr. Rodriguez, and Dr. Ludwig, and (4) improperly required objective evidence of disability.  *See Pl.'s Trial Br.* 22:10-18.  Additionally, Plaintiff claims that there is "substantial evidence" that MetLife was operating under a conflict of interest because it "systematically sought to deprive other disability applicants from payment of their long term disability benefits by employing medical consulting companies and medical consultants to provide reports in which it is concluded that no disability is found."  *Id.* at 22:19-24.  The Court now examines the extent to which MetLife's conflict of interest influenced its claim determination in this case.

      1.      <u>Whether MetLife Failed to Investigate Plaintiff's Claim or Request Further Information</u>

      As a preliminary matter, the LTD Plan places the burden of proof on Plaintiff, which is permitted under ERISA.  *See Jordan v. Northrup Grumman Corp. Welfare Ben. Plan*, 63 F. Supp. 2d 1145, 1157 (C.D. Cal. 1999) ("It is not inappropriate for an insurance company to place an initial burden of proof on claimants.").  The Summary Plan Description states: "*You* will need to provide [Kaiser's] HR Connection with a completed Employee's Statement of Disability and *medical documentation* certifying your disability from the physician treating you for the claimed period."  (AR 140 (emphasis added).)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

Even though Plaintiff had the burden of proof, he argues that MetLife failed to request "specific information concerning [Plaintiff's] job description." *See Pl.'s Trial Br.* 8:25-26. The Court disagrees. MetLife required Plaintiff to submit a resume, in which he provided a job description of his position as a lead project manager. (AR 409.) Additionally, MetLife required a Supervisor Statement, which was completed by Anil Joshi on September 2, 2004 and described the physical and cognitive requirements of Plaintiff's job. (AR 466-467.) Additionally, with regard to Plaintiff's medical records, Plaintiff notes that MetLife did request further information from Plaintiff's Kaiser physicians. *See Pl.'s Trial Br.* 6:14-16 ("Despite numerous requests that Kaiser and Dr. Rodriguez provide medical records and information to METLIFE to corroborate WALKER's disability, *made by METLIFE* and by WALKER himself, few records were supplied by Kaiser." (emphasis added)).

Moreover, MetLife provided Plaintiff with several opportunities to provide evidence of his disability and informed Plaintiff of the information it needed in making a claim determination. The initial claim process required Plaintiff to provide an Employee Statement (AR 473), an Attending Physician Statement (AR 471-472), and an Activities of Daily Living form (AR 418). When MetLife initially denied the claim, the November 11, 2004 letter stated: "If you choose to appeal this denial, as described below, please include with your appeal *the results of appropriate testing* that would document any claims of impairment that would prevent you[] from performing the duties of your occupation." (AR 359 (emphasis added).) After MetLife upheld the denial on administrative appeal, Plaintiff was even afforded an addendum review. This addendum review took into account additional information provided by Plaintiff, including Dr. Rodriguez's supplemental "Doctor's Certificate" and Dr. Ludwig's report. Therefore, MetLife's purported failure to investigate further does not suggest that MetLife operated under an actual conflict of interest in denying Plaintiff's claim.

> ### 2.   Whether MetLife Denied Plaintiff's Claim Without Complete Information and Documentation

Plaintiff argues that MetLife did not base its denial on a complete record. However, Plaintiff's argument belies the substantial record on which MetLife based its claim determination. First, Dr. Ito's report reviews the information contained in Plaintiff's file, including the information supplied by Plaintiff. (AR 349-355.) Dr. Ito did not indicate that she needed any information not already contained in the record to make her determination.

Second, Dr. Jares' initial report mentions that the single-fiber EMG study relied upon by Dr. Rodriguez in making his myasthenia diagnosis was not in Plaintiff's file. *See Pl.'s Trial Br.*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|----------|----------------------|------|--------------|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

9:20-23, 10:2-6 (citing AR 320)).  However, Dr. Jares credited Plaintiff's symptoms—notwithstanding his concerns with the diagnosis—and concluded that Plaintiff was able to continue as a project leader:

> Mr. Walker's diagnosis is uncertain at this time.  *However*, he has been noted to have some neurologic deficits, including weakness of his left upper and lower extremity, sensory loss involving his left upper and lower extremity and diffuse hyperreflexia, but no cranial nerve abnormalities and no cognitive abnormalities.

(AR 321. (emphasis added)) Even assuming that Dr. Jares did not have a complete medical record to confirm Dr. Rodriguez's diagnosis of myasthenia gravis, Dr. Jares' report does not suggest that he lacked sufficient information concerning Plaintiff's impairments and whether those symptoms qualified Plaintiff as "disabled" under the LTD Plan in light of his job responsibilities.

Third, Plaintiff complains that MetLife did not account for Plaintiff's job responsibilities in making its claim determination.  *See Pl.'s Trial Br.* 6-8.  As discussed previously, Plaintiff provided a resume describing his job responsibilities, and Anil Joshi completed a "Supervisor Statement" that covered the physical and cognitive requirements of Plaintiff's position.  Dr. Ito's report references the information provided by Anil Joshi in her report:

> Job description for lead project manager indicates 5-6 hours of sitting and repetitive use of both hands, 1-2 hours of walking is required.  There is occasionally [sic] lifting and carrying of up to 10lb and continuous need for interpersonal relationship and frequent situations involving stress.  Some modifications to schedule can be accommodated.

(AR 349.)  Therefore, MetLife based its decision on a substantial record, including an addendum review, and the Court does not find that MetLife denied Plaintiff's claim due to a conflict of interest on this ground.

> 3. <u>Whether MetLife Failed to Credit or Defer to the Opinions of Dr. Fu, Dr. Rodriguez, or Dr. Ludwig</u>

Plaintiff claims that MetLife was required to follow the opinions of Dr. Rodriguez and Dr. Fu because they were Kaiser physicians.  *Pl.'s Trial Br.* 12:16-17:2.  This argument is flawed for several reasons.  First, MetLife is not obligated to defer to the opinions of Plaintiff's

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

treating physicians. The "treating physician rule" that governs disability determinations under the Social Security Act, 42 U.S.C. § 231 *et seq.*, and requires administrative law judges to afford more weight to the opinions of treating sources, has been abrogated in the ERISA context. *See Black & Decker Disability Plan v. Nord*, 528 U.S. 822, 829-30, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) (finding that the "treating physician rule" does not govern private benefit plans under ERISA).

Second, Plaintiff attempts to assign some fiduciary significance to the opinions and recommendations of Dr. Fu and Dr. Rodriguez based on their employment as Kaiser physicians and Kaiser's position as the Plan Administrator. However, as discussed previously, Kaiser delegated its fiduciary and administrative responsibilities to MetLife with regard to the administration of the LTD Plan. (AR 139, 158.) Therefore, MetLife—and not Kaiser—was the named fiduciary of the LTD Plan according to §§ 4.1 and 5.2 of the Plan Document.[5]

In Plaintiff's responsive brief, Plaintiff ultimately concedes that the "treating physician rule" does not apply to ERISA plans and that the opinions of treating physicians "are not to be credited over the opinions of an insurer's consulting physicians." *See Pl.'s Resp. Trial Br.* 5:17-21. Nevertheless, Plaintiff suggests that the opinions of his treating physicians are to be afforded more weight than in the "ordinary case" because (1) the Kaiser physicians' opinions were binding and conclusive, (2) the consulting physicians were biased, and (3) the treating physicians' opinions were more credible than those of the consulting physicians. *See id.* 5:17-28. These arguments are unpersuasive, however, because the opinions of Dr. Fu and Dr. Rodriguez were not binding on MetLife due to the sole discretionary authority granted to MetLife in making eligibility determinations. Furthermore, Plaintiff failed to provide sufficient evidence that either Dr. Ito or Dr. Jares was biased, or that their opinions were less credible than those of Plaintiff's treating physicians. Indeed, Dr. Ludwig stated that Plaintiff's major problems consisted of left-sided weakness and sensory disturbance, but that Plaintiff exhibited

---

[5] Even if Kaiser was the administrator of the LTD Plan and retained its fiduciary status with respect to claim determinations under the LTD Plan, the decisions of its physicians would not be considered fiduciary acts under ERISA. *See Pegram v. Herdrich*, 530 U.S. 211, 231, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) ("[W]e think Congress did not intend [for an HMO] to be treated as a fiduciary to the extent that it makes mixed eligibility decisions acting through its physicians."). In their role as treating physicians, their "mixed eligibility decisions"—i.e. treatment decisions that have coverage consequences—would not be "fiduciary acts" under ERISA, which requires that a fiduciary act as a manager, administrator, or financial advisor of an ERISA plan. *See id.* at 222 (citing 29 U.S.C. §§ 1002(21)(A)(i)-(iii)).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|----------|------------------------|------|--------------|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

no signs of myasthenia gravis during the examination.  (AR 191.) Dr. Ludwig proceeded to conclude that Plaintiff was, thus, "temporarily totally disabled" without any discussion of Plaintiff's job duties.  A determination that Plaintiff was disabled under the LTD Plan would require an assessment of his ability to perform his job as a lead project manager.  Accordingly, the Court does not find that MetLife failed to properly credit Plaintiff's treating physicians.

4.    Whether MetLife Improperly Required Objective Medical Evidence

Plaintiff contends that MetLife's use of "incorrect criteria (such as requiring objective evidence)" demonstrated an actual conflict of interest in denying Plaintiff's claim.  *See Pl.'s Trial Br.* 22:15-16.  The Court disagrees.  First, MetLife was the claim administrator for the LTD Plan, and as such MetLife was granted significant discretion to "construe and interpret each and every document setting forth the applicable terms of [the LTD] Plan."  (*See* AR 159.)  Due to the discretion granted to MetLife under the LTD Plan, MetLife had the discretion to require objective evidence even if the Plan Document was silent as to the appropriate criteria.  *See Wadyal v. Metro. Life Ins. Co.*, No. 02-5815, 2003 WL 22846229, at *4 (N.D. Cal. Nov. 24, 2003) ("[P]laintiff faults defendant for not giving plaintiff's subjective complaints more weight . . . .  This argument ignores the fact that defendant had discretion to interpret and apply plan provisions.").

Second, it was not unreasonable for MetLife to require objective medical evidence of Plaintiff's physical and neurological impairments in part because MetLife disclosed to Plaintiff that such evidence was required.  *See Leon v. Quintiles Transnational Corp.*, 300 Fed. App'x 558, 561 n.1 (9th Cir. Nov. 19, 2008) ("Moreover, in the initial denial letter, [the defendant] advised [the plaintiff] that she was required to submit objective evidence to support her diagnosis and claim of disability.").  The November 11, 2004 initial denial letter informed Plaintiff that his administrative appeal would need to be supported with "the results of appropriate testing that would document [Plaintiff's] claims."  (AR 359.)  The Court finds this statement to be sufficiently clear in notifying Plaintiff of what was needed to support his claim.  Furthermore, MetLife provided Plaintiff with an opportunity to provide more information as part of its addendum review.  Therefore, the Court does not find that MetLife's reliance on objective evidence suggests that MetLife's structural conflict of interest influenced its decision to deny Plaintiff's claim.

5.    Whether MetLife Systematically Denied Other Claimants' LTD Claims

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

Plaintiff argues that MetLife's consultant physicians were biased against Plaintiff's claim. In support of this argument, Plaintiff asks the Court to review several cases that purport to establish MetLife's and its consultants' systemic conflict of interest and pattern of denying benefit claims. Consideration of these cases is permitted because the Court has the discretion to "consider evidence outside the Administrative Record" in evaluating a conflict of interest. *See Abatie*, 458 F.3d at 970. The Court, however, is not persuaded that these cases demonstrate that MetLife improperly denied Plaintiff's claim to benefits.

First, *Walker v. Metro. Life Ins. Co.*, 585 F. Supp. 2d 1167 (N.D. Cal. 2008), involved a discovery dispute. The court in that case ordered MetLife to state the number of claims it has granted or denied after an independent review by a National Medical Review ("NMR") physician consultant. *See id.* at *1176. No such statistical evidence was discussed in that case.

Second, Plaintiff cites to a case from the District of Massachusetts that did not involve MetLife, in which the court drew a negative inference as a discovery sanction. *See Denmark v. Liberty Life Assurance Co.*, No. 04-12261, 2005 WL 3008684 (D. Mass. Nov. 10, 2005) ("I will, as a sanction, draw the inference suggested by the Plaintiff, namely that NMR has not found in favor of a single claimant . . . ."), *opinion withdrawn by Denmark v. Liberty Life Assurance Co.*, 530 F.3d 1020 (1st Cir. 2008). That case, thus, offers no factual support for Plaintiff's contention that MetLife systematically denies claims.

Third, Plaintiff cites to a Ninth Circuit case to claim that MetLife, NMR, and Dr. Jares had an "unnatural and conflicted relationship." *See Pl.'s Trial Br.* 23:10-24:28 (citing *Nolan v. Heald Coll.*, 551 F.3d 1148 (9th Cir. 2009)). Unlike the current bench trial, however, *Nolan* involved a motion for summary judgment:

> Whether MetLife improperly denied benefits in this case is a close question, particularly when and if the abuse of discretion standard is tempered with skepticism. There were, after all, no less than three treating physicians who opined that Nolan was unable to perform sedentary work. That is not to say that MetLife was not entitled to rely on the opinions of its independent physicians. However, given MetLife's reliance on Network Medical Review and Drs. Jares and Silver in denying benefits in this case, it is possible that had the district court viewed the evidence of bias in the light most favorable to Nolan—and tempered the abuse of discretion standard with skepticism because of it—the court would have determined that evidence of bias was material and denied summary judgment under the facts of this case.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

*Id.* at 1155.  While Plaintiff points to a footnote in the case that mentions Dr. Jares' compensation from NMR, *see id.* at 1152, the Court agrees with MetLife that this evidence is not properly before the Court, *see Def.'s Resp. Trial Br.* 9:18-22, 9 n.4.

Additionally, MetLife provides cases of its own, in which Dr. Jares' opinions were viewed favorably.  *See, e.g.*, *Frost v. Metro. Life Ins. Co.*, 470 F. Supp. 2d 1101, 1105-06 (C.D. Cal. 2007), *rev'd on other grounds* 320 Fed. App'x 589 (9th Cir. Mar. 25, 2009); *Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005) ("MetLife's decision to deny Hunt's claim based on the opinions of Dr. Jares and Dr. Rodgers was not an abuse of discretion."). Therefore, Plaintiff has failed to present sufficient evidence that MetLife systematically denies claims.  The fact that MetLife has denied claims in other cases is insufficient to indicate that MetLife operated under a conflict of interest in this case.

6. <u>Conclusion</u>

The Court reviews MetLife's decision for abuse of discretion because MetLife was granted discretion to administer the LTD Plan.  *See Abatie*, 458 F.3d at 963.  However, as MetLife operates under a structural conflict of interest, the Court considers the conflict as a factor in its review of MetLife's decision.  *See Montour*, 588 F.3d at 629; *Abatie*, 458 F.3d at 965.  Thus, the Court examined several issues raised by Plaintiff to gauge the extent to which the conflict was implicated in this case—whether MetLife adequately investigated his claim, had adequate information to make its determination, failed to defer to Plaintiff's treating physicians, improperly required objective evidence, and relied upon biased consultants.  On balance, the Court does not find sufficient evidence to suggest that MetLife's conflict of interest influenced its decision to deny Plaintiff's claim.  Therefore, the Court reviews MetLife's decision with broad deference under the abuse of discretion standard.

D. <u>Whether MetLife Abused Its Discretion</u>

MetLife did not abuse its discretion in denying Plaintiff's claim.  The evidence in the record supports MetLife's determination that Plaintiff was not "disabled" under the terms of the LTD Plan.  In order to qualify as disabled, Plaintiff must have been unable to earn more than 80% of his pre-disability earnings at his occupation with an employer in his local economy for the duration of the six-month elimination period.  (AR 89.)  Dr. Ito and Dr. Jares both reviewed information about Plaintiff's occupation as a lead project manager, including the Supervisor Statement, and both concluded that Plaintiff's occupation was primarily sedentary.  The Court finds that MetLife reasonably relied upon the consulting and treating physicians, communicated

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1178 PSG (AGRx) | Date | May 12, 2010 |
|---|---|---|---|
| Title | Curtis Walker v. Metropolitan Life Insurance Company | | |

fully with Plaintiff, and reasonably construed the terms of the LTD Plan.  Accordingly, the Court holds that MetLife did not abuse its discretion in denying Plaintiff's claim for LTD benefits.

III.    Conclusion

          For the reasons discussed, the Court finds for Defendant.  Defendant is ordered to prepare and submit a judgment consistent with this order.

          **IT IS SO ORDERED.**